IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RAYMOND H. GRIFFIN,

    Plaintiff,

    v.

GMAC COMMERCIAL FINANCE,
L.L.C.,

    Defendant.

CIVIL ACTION FILE

NO. 1:05-CV-199-WBH-GGB

## **ORDER**

This employment discrimination action is before the court on plaintiff's Second Motion for Leave to Amend Complaint, and to Extend the Discovery Period by Seventy-Five Days [Doc. 20], defendant's Motion for Extension to Respond to Plaintiff's Motion for Leave to File a Second Amended Complaint [Doc. 29], defendant's Motion to Compel Discovery [Doc. 33], plaintiff's Motion for Extension of Time to Complete Discovery by 75 Days [Doc. 34], defendant's Motion for Extension of Time to Respond to Plaintiff's Discovery Requests [Doc. 37], and plaintiff's Motion for Entry of a Protective Order [Doc. 41]. Each of these motions is addressed separately below.

AO 72A
(Rev.8/82)

I.      **Plaintiff's Second Motion for Leave to Amend Complaint**

    A.      Procedural and Factual Background

Plaintiff filed his original complaint on January 4, 2005, without the assistance of counsel.  On August 26, 2005, he filed a *pro se* amended complaint, in which he alleged that defendant had terminated his employment because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  (Doc. 5 at 2).  In the factual portion of plaintiff's amended complaint, he also described allegedly discriminatory treatment he had received from defendant prior to his termination.  (See id. at 6-7).

Defendant filed an answer to plaintiff's first amended complaint on January 19, 2006.  (Doc. 12).  On February 3, attorney Bobby C. Aniekwu entered an appearance on plaintiff's behalf.  (Doc. 13).  The discovery period for this action began on March 6 and ended on June 19.  On May 11, Mr. Aniekwu filed the instant motion to amend plaintiff's complaint for a second time.  (Doc. 20).  He seeks to add the following state law claims: (Count 3) promissory fraud, misrepresentation, deceit, and breach of implied-in-fact contract; (Count 4) breach of implied covenant of good faith and fair dealing; (Count 5) promissory estoppel and unjust enrichment; (Count 6) quantum meruit; (Count 8) negligent hiring and retention; and (Count 9) negligent infliction of

emotional distress.   (Doc. 20, Proposed Amend. Compl. at 23-32, 36-39).   Plaintiff also seeks to modify his federal claims by alleging racial harassment (in addition to discriminatory termination) under both 42 U.S.C. § 1981 (Count 1) and Title VII (Count 2), and by alleging retaliation and retaliatory discharge under § 1981 and Title VII (Count 7).   (Id. at 20-22, 33-35).

Counts 3 through 6 of plaintiff's proposed amended complaint concern the employment agreement plaintiff made with defendant.   These claims are not based on plaintiff's termination, but rather charge defendant "with the failure to pay him the incentive bonuses or commissions [he] earned during his employment by Defendant." (Doc. 40, Reply Brf. at 6).   "Plaintiff does not argue that he was promised a job for life, but that he was promised to be compensated in accordance with [a] certain stated Plan, and Defendant intentionally failed to pay the Plaintiff in accordance with the Plan." (Id. at 9).[1]

In support of his claims, plaintiff directs the court's attention to two documents. The first is a letter agreement between plaintiff and defendant regarding the terms of

---

[1]Defendant apparently made the faulty assumption that plaintiff's proposed state law claims concern his termination.   (See, e.g., Doc. 32, Def. Brf. at 8-10).   For this reason, much of defendant's argument misses the point.

3

plaintiff's employment.  (Doc. 40, Exh. 1).  The agreement, which both parties signed,

states as follows:

> Your compensation package will be as follows:
>
> 1.  Your annual salary of $125,000 is payable semi-monthly.
>     You will be eligible for consideration for annual merit
>     increases on the dates and in the amounts determined by
>     the GMAC Business Credit Board of Directors.  On July
>     31, 2001 and September 29, 2001 payments of
>     $20,000.00 each will be given as advance draw against
>     your Incentive Compensation pay out for the year 2001.
>     This will be deducted from the total pay out for the year
>     2001.
>
> 2.  For Plan year 2001, you will be eligible to receive a
>     performance bonus targeted toward *a percentage (to be
>     determined)* of syndication fee's [sic] earned.   The
>     *Incentive Compensation plan* for your position would
>     entail three components including a percentage of fees
>     derived for individual effort by you on any syndicated
>     transaction, a percentage based upon the total fees
>     generated by your group and a *discretionary* amount
>     determined by GMAC Business Credit's Board of
>     Directors or the Pres[ident].  *The actual bonus paid will
>     depend on the Company's performance criteria and
>     your personal achievements in accordance with
>     established target results and expectations.*
>
> \* \* \* \*
>
> 5.  *Your employment will be on an at will basis.*  Both you
>     and GMAC Business Credit LLC can terminate your
>     employment at any time, for any reason.

4

(Doc. 40, Exh. 1 at 1).  Plaintiff signed this document on February 2, 2001.  (Id. at 3).

Plaintiff's second document is entitled, "New Business Development Bonus Compensation Plan: Equipment Finance Division, Capital Markets Group."  (Doc. 40, Exh. 3).[2]  Plaintiff contends that this is the "Plan" referred to in the letter agreement.  (Doc. 40, Reply Brf. at 7).  The Plan makes clear that incentive compensation is not guaranteed.  For example, it states that "Management may at any time revise, amend, suspend, or terminate in whole or in part, any or all provisions of this Plan."  (Doc. 40, Exh. 3 at 7).  The Plan also states that it "is contingent in character" and that "[e]ligibility for payment under the Plan is conditioned upon employment . . . on the date of payment."  (Id.).

The Plan provides detailed information regarding how bonuses will be calculated, but leaves many variables undefined.  (See Doc. 40, Exh. 3 at 3-5).  For example, it states: "The Commission formula is calculated by multiplying a base commission rate (specified basis points hereinafter defined) times the net investment funded, *as reasonably determined by the Bonus Committee,* for all transactions originated by the

---

[2]Plaintiff also provides the court with a similar plan for the year 2000.  (Doc. 40, Exh. 2).  Because plaintiff was not employed by defendant until 2001, the court will discuss only the second plan.  In any event, the plans appear to be identical in all relevant respects.

Capital Markets Group."  (Id. at 3, emphasis added).  In addition, all awards for the Capital Markets Group are "pooled," of which fifty percent is held back until the end of the year, at which time it is "*subjectively* split among the Capital Markets Officers. . . . based upon effective teamwork, professional growth, initiative, inter company communication skills and contribution by the participant in fostering acquired institutional knowledge and market positioning."  (Id. at 3, 5, emphasis added).  This subjective determination is made by the head of the Capital Markets Group and the President of the Equipment Finance Division.  (Id.).  Finally, the Plan states that it is to be administered by the Bonus Committee and that the Committee "is solely responsible for and has the power of final decision regarding all aspects of the Plan, including, but not limited to, (a) interpreting the Plan, . . . and (c) adjusting individual payouts, even if it appears to conflict with other statements in the Plan."  (Id. at 6).

B.   Standard of Review

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend a complaint must be "freely given when justice so requires."  Fed.R.Civ.P. 15(a).

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In

6

> the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

### C.      Timeliness of Plaintiff's Motion

Defendant first argues that plaintiff's motion to amend should be denied because it was not timely filed.  (Doc. 32 at 6-8).  Although the court agrees that plaintiff should have filed his motion at an earlier date, the court does not find that the delay in this case was so unreasonable, or prejudicial to defendant, to warrant denial of plaintiff's motion on this ground.  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  Foman, 371 U.S. at 182.  Furthermore, any possible prejudice to defendant is greatly reduced by the court's decision, discussed below, to deny plaintiff's Motion to Amend with respect to many of his proposed claims.

### D.      Merit of Plaintiff's Claims

In the alternative, defendant argues that plaintiff's request to amend should be denied with respect to his state law claims because those claims are without merit. (Doc. 32 at 8-24).  With the exception of one claim, the court agrees.  Each of plaintiff's proposed state law claims is discussed separately below.

## Count 3:
### Promissory Fraud, Misrepresentation, Deceit,
### Breach of Implied-in-Fact Contract

Count 3 of plaintiff's proposed amended complaint contains many vague allegations regarding alleged misrepresentations made by defendant at the time of plaintiff's hire.  For example, plaintiff states that defendant "falsely represented . . . its intention to employ and be fair and nondiscriminatory . . . "; that defendant promised plaintiff that he would be given "a free hand to manage and create a compensation plan" for his work group, that he "would be fully and fairly compensated," and that "the compensation package" for plaintiff's work group "would be based on the assumptions outline provided along with the [group's] budget"; and that defendant "agreed to pay plaintiff incentive-based compensation and bonuses for work performed" and not to "arbitrarily chang[e] the terms of the outlined assumptions document provided with the 6 month budget . . . ."  (Doc. 20, Prop. Amend. Compl. ¶¶ 63-67).  Plaintiff also

8

alleges that he was promised "a performance bonus targeted toward a percentage of the syndication fees earned by him," as well as the total fees earned by plaintiff's group and "a discretionary amount determined by the GMAC Business Credit's Board of Directors."  (Id. ¶ 66).

**Fraud**:  To the extent plaintiff's claim is based on alleged fraud, it is untenable. A claim of fraud requires (among other things) proof that plaintiff *reasonably* relied on misrepresentations made by defendant.  American Casual Dining v. Moe's Southwest Grill, 426 F.Supp.2d 1356, 1364-66 (N.D.Ga. 2006).[3]  "[P]arties are not justified in relying upon representations that are 'general commendations or mere expressions of opinion, hope, expectation and the like.'"  American Casual Dining, 426 F.Supp.2d at 1364.  For this reason, alleged promises regarding defendant's intent to be fair and nondiscriminatory, to give plaintiff "a free hand," and to fully and fairly compensate plaintiff cannot be the basis of a fraud claim.

Furthermore, statements and promises as to future events generally cannot support a fraud claim, *unless* the promises are "made with a present intention not to

---

[3]"Negligent misrepresentation is similar to fraud and requires the same elements of proof, the only difference being whether the defendant knowingly or negligently made the misrepresentations."  American Casual Dining, 426 F.Supp.2d at 1365. Reasonable reliance is required for both claims.  See id. at 1365-66.

9

perform." Ely v. Stratoflex, Inc., 132 Ga.App. 569, 208 S.E.2d 583, 584 (1974)(citing

cases). It is on this exception to the general rule on which plaintiff relies.

In Ely, the Georgia Court of Appeals considered an at-will employee (like

plaintiff), who claimed that he had been fraudulently induced to work for the defendant

with promises that –

> 'my new employment would equal or exceed my
> expectations of my then present employment'; and 'this
> would be a job for the rest of my working life,' and 'that I
> would never be required to relocate out of Atlanta;' and 'to
> pay me a minimum of $20,000.00 per year during the interim
> it would take me to develop the accounts and volume for
> which he had solicited me'; and 'he would make sure I made
> enough money so that I didn't need to worry about (a
> retirement plan and insurance program).'

Ely, 208 S.E.2d at 584. Like plaintiff, "Ely attempt[ed] to place the promises made

here in the line of cases . . . . which hold that fraud may be predicated on a promise

made with a present intention not to perform." Id. The Georgia Court of Appeals

rejected Ely's argument because the promises "were unenforceable even absent any

fraud at the time of their utterance. . . . because the underlying employment contract,

being terminable at will, [was] unenforceable." Id. at 585 (citing cases); see also Alston

v. Brown Transport Corp., 182 Ga.App. 632, 356 S.E.2d 517, 518-19 (1987)(summary

judgment granted to employer on fraud claim regardless of whether employer intended

to honor assurances that dockworkers would be promoted after 90 days). This holding requires the court to find that plaintiff's proposed fraud claim is without merit. "[T]here can be no justifiable reliance on a promise which is unenforceable at the time it is made." Hodge Residential, Inc. v. Bankers First Federal Sav. & Loan Ass'n, 199 Ga.App. 474, 405 S.E.2d 302, 305 (1991).

**Contract**: Turning to the contract aspects of Count 3, the court acknowledges that "an employee cannot sue to enforce future performance of a terminable-at-will employment agreement," but "an employee may sue on an oral [or written] contract for employment terminable at will for the amount of compensation due him, based upon services actually performed by him up to the time of his discharge . . . ." E.D. Lacey Mills, Inc. v. Keith, 183 Ga.App. 357, 359 S.E.2d 148, 152 (1987)(internal quotation marks omitted); accord Livernois v. Medical Disposables, Inc., 837 F.2d 1018, 1023 (11th Cir. 1988)(citing E.D. Lacey Mills); Tart v. IMV Energy Systems of America, Inc., 374 F.Supp.2d 1172, 1181 (N.D.Ga. 2005)(same). Nonetheless, plaintiff's claim is precluded by the holding of the Georgia Supreme Court in Arby's, Inc. v. Cooper, 265 Ga. 240, 454 S.E.2d 488 (1995).

The plaintiff in Arby's sued for bonuses that were "partially based on a formula" and also based, "at least in part, on the discretion of the president of Arby's, Inc."

11

Arby's, 474 S.Ed.2d at 489.  The Georgia Supreme Court concluded that such a promise could not be enforced because it was not a promise "for an exact amount or based upon a 'formula or method for determining the exact amount of the bonus.'"  Id. The court explained:

> Permitting a bonus to be only partially tied to a formula is not consistent with the rationale for requiring a formula. That rationale . . . is that *the sum of money to be paid for performance of services under a contract should be definitely and objectively ascertainable from that contract.* Harrell v. Deariso, 82 Ga.App. 774, 778, 62 S.E.2d 434 (1950)(difference between gross sales price and $11,000 was sufficiently definite);  Mosteller v. Mashburn, 64 Ga.App. 92, 96-99, 12 S.E.2d 142 (1940)(promise to pay $4,000 to $5,000 not definite);  Cary v. Neel, 54 Ga.App. 860, 189 S.E. 575 (1936)(five cents per ton of gravel sold not indefinite).  See also Phillips v. Hudson, 9 Ga.App. 779, 780-781(2), 72 S.E. 178 (1911)(promise to pay as a bonus a certain percentage of a company's net earnings was definite and enforceable).

Arby's, 454 S.E.2d at 489 (emphasis added).  As in Arby's, "the basis for rendering certain the bonuses promised to [plaintiff] is at least in part afforded by a future exercise of discretion.  In such circumstances, the promise to pay a bonus in the future amounts to a promise to change the terms of compensation in the future and, thus, is an unenforceable executory obligation."  Id.

12

**Count 4:**
**Breach of Implied Covenant of Good Faith**
**and Fair Dealing**

In Count 4 of plaintiff's proposed amended complaint, he alleges that defendant "warrantlessly interfer[ed] with [the] performance of his employment duties, by intentionally discriminating against Plaintiff in the terms and conditions of his employment, by denying Plaintiff his employment benefits and refusing to pay him for his earned transactions, and by fabricating pretextual reasons for his termination." (Doc. 20, Proposed Amend. Compl. ¶ 74).

Under Georgia law, the covenant of good faith and fair dealing "is not an independent contract term. . . . It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when performance is maintained *de jure*. . . . But it is not an undertaking that can be breached apart from those terms." Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990); see also U.S. Faucets, Inc. v. Home Depot U.S.A. Inc., ___ F.Supp.2d ___, 2006 WL 1518887, *4 (N.D.Ga. May 31, 2006)(slip op.).  "The clear and consistent holding of [Georgia] cases is that the breach of the implied covenant of good faith and fair dealing cannot be asserted and does not survive independent of a claim for breach of contract." U.S. Faucets, 2006 WL 1518887, *5.  Because the

13

court has found plaintiff's contract claim to be without merit, his claim for breach of the covenant of good faith and fair dealing is also without meritless.  Cf. Mgm't Assistance, Inc. v. Computer Dimensions, Inc., 546 F.Supp. 666, 676 (N.D.Ga. 1982)(dismissing claim where the plaintiff had released the defendant of liability for breach of contract); Heritage Creek Dev. Corp. v. Colonial Bank, 268 Ga.App. 369, 601 S.E.2d 842, 847 (2004)("Inasmuch as [plaintiff] cannot prevail on its breach of contract claim, it cannot prevail on a cause of action based on the failure to act in good faith in performing the contract.").

Finally, to the extent plaintiff intended to bring a tort claim for lack of good faith, the duty to act fairly and in good faith "is contractual in nature and does not give rise to tort liability."  Wynn v. Arias, 242 Ga.App. 712, 531 S.E.2d 126, 131 (2000).

## Count 5:
## Promissory Estoppel and Unjust Enrichment[4]

---

[4]Although "unjust enrichment" is included in the heading for Count 5, this aspect of plaintiff's claim is more appropriately considered in combination with his claim of quantum meruit.  For this reason, unjust enrichment will be discussed in the following section.

In Count 5 of plaintiff's proposed amended complaint, he alleges that he relied, to his detriment, on "the foregoing promises" made by defendant when he accepted defendant's offer of employment. (Doc. 20, Prop. Amend. Compl. ¶ 78).

"The principle of promissory estoppel relates to the sufficiency of consideration to enforce a promise; it 'merely provides that in certain circumstances, the reliance by the promissee or third party upon the promise of another is sufficient consideration, in and of itself, to render the executory promise enforceable against the promissor.'" Bank of Dade v. Reeves, 257 Ga. 51, 354 S.E.2d 131, 133 (1987). The key difference between a contractual promise and a promise supported by promissory estoppel "is that in the former case the detriment is bargained for in exchange for the promise; in the latter, there is no bargain. The detriment is a consequence of the promise but does not induce the making of the promise." Bank of Dade, 354 S.E.2d at 133.

"Where parties enter into a contract with bargained for consideration, the terms of which include the promises alleged in support of a promissory estoppel claim, promissory estoppel is not available as a remedy." American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C., 426 F.Supp.2d 1356, 1371 (N.D.Ga. 2006); accord Bank of Dade, 354 S.E.2d at 133. Accordingly, to the extent Count 5 is dependant on

15

promises made in plaintiff's letter agreement with defendant, a claim for promissory estoppel is not available.

Furthermore, "[e]stoppel does not apply . . . to vague, indefinite promises." Mooney v. Mooney, 245 Ga.App. 780, 538 S.E.2d 864, 868 (2000).  "[W]hile the promise need not meet the formal requirements of a contract, it must, nonetheless, have been communicated with sufficient particularity to enforce the commitment.  A promise is a manifestation of an intention to act or refrain from acting in a *specified* way, so made as to justify a promisee in understanding that a commitment has been made." Mooney, 538 S.E.2d at 868; accord American Casual Dining, 426 F.Supp.2d at 1372; see also Wnuk v. Doyle, 276 Ga.App. 550, 623 S.E.2d 740, 742 (2005)("a promise too indefinite to be enforced under a breach-of-contract theory is too indefinite to be enforced under a promissory estoppel theory.").

> "[W]ords of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise. Although such words are often referred to as forming an illusory promise, they do not fall within the present definition of promise.  They may not even manifest any intention on the part of the promisor.  Even if a present intention is manifested, the reservation of an option to change that intention means that there can be no promisee who is justified in [the] expectation of performance."

16

Kemira, Inc. v. Williams Investigative & Sec. Services, Inc., 215 Ga.App. 194, 450 S.E.2d 427, 431 (1994)(quoting Restatement (Second) of Contracts § 2, cmt. e).

In Jackson v. Ford, 252 Ga.App. 304, 555 S.E.2d 143 (2001), the Georgia Court of Appeals considered whether an attorney-employee, who claimed he had not received promised bonuses, could maintain a promissory estoppel claim.   According to the attorney, the defendant law firm had "offered him an annual salary of $30,000, plus a bonus or 'incentive compensation' of ten to fifteen percent of contingency fees received in cases on which Jackson did 'substantive' or 'substantial' work."   Jackson, 555 S.E.2d at 145.   The Georgia court concluded that the promise was too indefinite to maintain a promissory estoppel claim.   Jackson, 555 S.E.2d at 146-47.   The court explained:

> As an initial matter, Ford clearly had discretion to set the bonus compensation within the ten to fifteen percent range. Moreover, that range applied only to cases in which Jackson performed "substantial work."   Jackson noted at his deposition that "substantial is . . . subject to some disagreement, but not much."   He has pointed to no evidence, however, that the parties ever reached an agreement as to what a "substantial" amount of work might be.

* * * *

17

> We find that the amount of incentive compensation promised Jackson was not definite or objectively ascertainable from the promise made.  Although a partial formula established a range of compensation, payments within that range were discretionary, and the point at which that range became applicable – "substantial work" – was hardly definite.

Jackson at 146-47.

Because of the uncertainty in the letter agreement regarding the amount of plaintiff's bonuses, the court finds that Jackson is applicable and that his promissory estoppel claim is without merit.

## Count 6:
## Quantum Meruit

In Count 6 of plaintiff's proposed amended complaint, he alleges that he "has not been paid the reasonable value of his services, to his detriment and to the unjust enrichment of Defendant."  (Doc. 20, Prop. Amend. Compl. ¶ 85).

"The equitable doctrine of quantum meruit prevents a person who benefits from another's services to be unjustly enriched by those services." Jackson, 555 S.E.2d at 148.  The value of the disputed services "is defined in terms of value to the recipient." Id.  The doctrine applies only when a contract between the parties regarding the

18

services does not exist.  <u>See</u> <u>Engram v. Engram</u>, 265 Ga. 804, 463 S.E.2d 12, 15 (1995); <u>Sanders v. Commercial Cas. Ins. Co.</u>, 226 Ga.App. 119, 485 S.E.2d 264, 268 (1997).  "[T]here cannot be an express and implied contract for the same thing existing at the same time between the same parties." <u>Fonda Corp. v. Southern Sprinkler Co., Inc.</u>, 144 Ga.App. 287, 241 S.E.2d 256, 260 (1977).

In <u>Rodriguez v. Vision Correction Group, Inc.</u>, 260 Ga.App. 478, 580 S.E.2d 266 (2003), the Georgia Court of Appeals consider the claim of an employee to unpaid bonuses and stock options.  At the time of hire, Rodriguez had been "promised bonuses once [her employer] became profitable, and eventual stock options." <u>Rodriguez</u>, 580 S.E.2d at 267.  Rodriguez conceded that she did not have an enforceable contract for payment of bonuses or stock options, but she "attempt[ed] to circumvent this truth by suing in quantum meruit and unjust enrichment." <u>Id</u>.  The court found that Rodriguez could not recover based on either of these theories because she could not "show that she was not already reasonably compensated for her services." <u>Id</u>. at 268.  "Indeed, Rodriguez would appear to have conceded that her salary compensated her by continuing to work for [the defendant] throughout the entire period in question." <u>Id</u>. (internal quotation marks and brackets omitted).

In the instant case, plaintiff and defendant entered into an at-will employment contract, which specified plaintiff's salary, but did not specify a particular bonus.  As in Rodriguez, the contract constitutes an express agreement between plaintiff and defendant regarding compensation for performance of plaintiff's job.   Because performance of plaintiff's job was part of the consideration for defendant's promise to pay a particular salary (with no particular bonus), "he cannot also recover the value of his continued employment through a quantum meruit claim."  Gerdes v. Russell Rowe Communications, Inc., 232 Ga.App. 534, 502 S.E.2d 352, 355 (1998).  Cf. Gerdes, 502 S.E.2d at 355 ("Since Gerdes' continued employment was part of the consideration for the 1987 agreement, he cannot also recover the value of his continued employment through a quantum meruit claim."); Lord Jeff Knitting Co., Inc. v. Lacy, 195 Ga.App. 287, 393 S.E.2d 55, 56 (1990)("The work for which appellee sought compensation was performed pursuant to an express agreement and appellee presented no evidence of extra work performed in addition to what the contract contemplated in support of his quantum meruit claim.").   "A plaintiff 'is estopped to recover on quantum meruit where there exists an express agreement.'"  Gerdes, 502 S.E.2d at 355.

20

## Count 8:
## Negligent Hiring and Retention

In Count 8 of plaintiff's proposed amended complaint, he alleges that he "repeatedly complained to the Defendant's senior management that he was being discriminated against by his supervisors," but that "Defendant disregarded Plaintiff's reported complaints and continued to retain" the offending employees. (Doc. 20, Prop. Amend. Compl. ¶ 97). Defendant asserts that it investigated plaintiff's complaints and "found no evidence of race discrimination." (Doc. 32, Def. Brf. at 19). This factual assertion, because it is not currently supported by evidence before the court, cannot (at this time) support a finding that plaintiff's claim is without merit. Accordingly, the court finds that plaintiff has stated a legitimate claim for negligent retention and cannot say, as a matter of law, that the claim is futile. Plaintiff's negligent-hiring claim, in contrast, is futile because it is not supported by any factual allegations concerning what defendant knew, or show have known, before it hired the relevant individuals.

## Count 9:
## Negligent Infliction of Emotional Distress

In Count 9 of plaintiff's proposed amended complaint, he alleges that defendant excluded him from meetings, did not allow him to present a business plan, moved him into a small office, and "routinely and openly criticized Plaintiff during meetings and in the presence of other employees and subordinates." (Doc. 20, Prop. Amend. Compl. ¶¶ 102-103). Defendant argues that plaintiff cannot maintain a claim for *negligent* infliction of emotional distress without alleging that he suffered a physical injury. (Doc. 32, Def. Brf. at 19-24).[5] The court agrees. "In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." Ryckeley v. Callaway, 261 Ga. 828, 412 S.E.2d 826, 828 (1992)(citing OB-GYN Assoc. v. Littleton, 259 Ga. 663, 386 S.E.2d 146 (1989)). Furthermore, Georgia courts have explicitly stated that physical

---

[5]Defendant also argues that plaintiff cannot maintain a claim of *intentional* infliction of emotional distress. However, because plaintiff's proposed amended complaint plainly does not contain such a claim, this argument will not be addressed.

In addition to attacking the substantive merit of plaintiff's claim, defendant argues that it is barred by Georgia's two-year statute of limitations. (Doc. 32, Def. Brf. at 20-21). If plaintiff's employment was terminated on January 7, 2003, as defendant asserts, the statute of limitations appears to be applicable. See Risner v. R.L. Daniell & Associates, P.C., 231 Ga.App. 750, 500 S.E.2d 634, 634-36 (1998); O.C.G.A. § 9-3-33. This statute may also apply to plaintiff's negligent retention claim. See Risner, 500 S.E.2d at 634. Defendant, however, does not rely on a statute-of-limitations argument with respect to plaintiff's negligent retention claim. For this reason, it has not been considered

injury is required for a negligent infliction of emotional distress claim.  See O'Neal v. Home Town Bank of Villa Rica, 237 Ga.App. 325, 514 S.E.2d 669, 676 (1999); Hall v. Carney, 236 Ga.App. 172, 511 S.E.2d 271, 274 (1999); Wellborn v. DeKalb County School Dist., 227 Ga.App. 377, 489 S.E.2d 345, 347 (1997); Carroll v. Rock, 220 Ga.App. 260, 469 S.E.2d 391, 393 (1996).

## II.   **Defendant's Motion for Extension to Respond to Plaintiff's Motion for Leave to File a Second Amended Complaint**

Defendant seeks an extension of time, by 30 days, for its response to plaintiff's Motion to Amend.  (Doc. 29).  Among other things, defendant states that an extension is needed due to the large number of new claims asserted by plaintiff in his proposed amended complaint.  (Id. at 2).  Plaintiff opposes the motion.  (Doc. 31).  For good cause shown, defendant's motion will be granted.

## III.   **Defendant's Motion to Compel Discovery**

Defendant asks the court to compel plaintiff's attendance at his own deposition and to award defendant its costs and attorney's fees as a sanction for plaintiff's failure to appear.  (Doc. 33).  Plaintiff opposes the motion.  (Doc. 47).

23

A.    <u>Background</u>

The parties agree that the discovery period for this action began on February 19,

2006, and ended on June 19, 2006.  The parties first met for a Rule 26(f) conference

on March 20, 2006.  (Doc. 33, Affidavit of Chandra C. Davis, ¶ 8).[6]  Defendant's

attorney, Chandra Davis, contacted plaintiff "numerous times" in May "requesting dates

in May and early June to conduct Plaintiff's deposition."  (Doc. 33, Davis Aff. ¶ 22).

On May 15, 2006, Ms. Davis sent an e-mail to Mr. Aniekwu stating that she would like

to depose plaintiff on June 19, 2006, the last day of the discovery period.  (Davis Aff.

¶ 25 & Exh. K).   Mr. Aniekwu responded later that day, stating that he was not

available on June 19.  (Davis Aff. ¶ 26 & Exh. L).  He added, "We could have it a week

earlier in June, but I will check with my client regarding his availability."  (<u>Id</u>.).

The next day, Ms. Davis sent an e-mail to Mr. Aniekwu stating: "We understand

you are not available on the 19th of June.  We propose the alternative dates of June

12th and June 15th.  Please let us know if you and Mr. Griffin are available on either of

---

[6]Defendant presents evidence, which plaintiff does not dispute, that the delay in scheduling the Rule 26(f) conference is attributable, in large part, to plaintiff's inaction. (<u>See</u> Doc. 33, Davis Aff. ¶¶ 6-7).

24

those dates."  (Davis Aff. ¶ 27 & Exh. M).  The following day, defendant served plaintiff with a deposition notice for June 12, 2006.  (Doc. 25).

On May 19, 2006, Mr. Aniekwu, who had not previously responded to Ms. Davis' e-mail regarding the June 12 date, sent Ms. Davis an e-mail stating the following:

> With regard to the Notice of Deposition, I can not confirm that date [June 12] until I have had a chance to check with my client of his availability, as I previously stated to you.  I will endeavor to get to him ASAP.  Meanwhile, I request that you consent to a 75 day discovery period extension so that both sides will have adequate time to conduct follow-up deposition[s] and resolve any discovery issues that may arise.

(Doc. 33, Davis Aff. ¶ 28 & Exh. N).  Ms. Davis responded by stating:  "we are going to keep the Notice for Plaintiff's deposition on June 12th.  Please notify us as soon as possible if he is unable to appear.  In addition, we are unable to agree to a 75-day extension of the discovery period."  (Davis Aff. ¶ 29 & Exh. O).  Shortly thereafter, Mr. Aniekwu contacted Ms. Davis by telephone and informed her that he was having difficulty reaching his client "because he was actively job-hunting out of town."  (Doc. 47, Decl. of Bobby C. Aniekwu, ¶ 9).

On June 1, 2006, Mr. Aniekwu sent an e-mail to Ms. Davis stating that he was out of town and providing her with the following information regarding plaintiff's deposition:

> I have also been able to speak with my client regarding the deposition notice, and he informs me that he is scheduled to be in New York during the week of June 12, for three separate job interviews. I previously informed you that I was not available on June 19. . . . Given the foregoing, it appears that the deposition has to be taken sometime in late June or early July.

(Davis Aff. ¶ 20, Exh. P). Later that day, defense co-counsel (Diana Suber) responded by e-mail, stating: "We are very anxious to get these issues resolved. Please provide us with dates and times next week when you will be available to have a teleconference." (Davis Aff. ¶ 31, Exh. Q, June 1, 2006 e-mail from Diana Suber to Bobby Aniekwu). On Friday of the following week (June 9), Ms. Suber sent Mr. Aniekwu a letter noting that he had not responded to her June 1 e-mail request for "dates and times next week," and stating that defense counsel would seek court intervention if Mr. Aniekwu did not contact them as soon as possible. (Id., Exh. Q, June 9, 2006 letter from Suber to Aniekwu).

The following business day (Monday, June 12), Mr. Aniekwu sent an e-mail to Ms. Suber stating the following:

> Responding to your . . . letter of last Friday (June 9, 2006),
> and confirming our telephone conversation this morning with
> your co-counsel on the subject matter, please be advised
> that *my client would agree to submit for deposition outside
> the discovery period* if the Court declines to extend
> discovery, and make ourselves available for deposition of
> Mr. Griffin during the last week of June, or early July.
> Specifically, I am available June 27 or 28, and July 6-14,
> 2006.   Please advise if any of these dates suit your
> convenience and I will confirm with my client.

(Doc. 47, Aniekwu Decl. ¶ 14 & Exh. 3, emphasis added).  Three days later, on May

15, 2006, plaintiff sent a second e-mail to Ms. Davis modifying the dates of his

availability and requesting a response as soon as possible.  (Aniekwu Decl. ¶ 15).

Defense counsel did not respond to either e-mail.  (Id. ¶¶ 14-15).  Instead, defendant

filed the instant Motion to Compel on June 16, 2006.

On June 12, 2006, the date noticed for plaintiff's deposition, neither party

appeared.  (Doc. 47, Aniekwu Decl. ¶ 12).

B.   Discussion

Rule 37(d) of the Federal Rules of Civil Procedure states that, if a party fails to

appear for a deposition, "after being served with a proper notice," the court "may make

such orders in regard to the failure as are just . . . ."  Fed.R.Civ.P. 37(d).  The court

27

must also order a party, who fails to appear for a properly noticed deposition, "to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."  Fed.R.Civ.P. 37(d); see also Maddow v. Proctor & Gamble, 107 F.3d 846, 853 (11th Cir. 1997)(discussing Rule 37(a)(4)(A)); Devaney v. Continental American Insurance Co., 989 F.2d 1154, 1159 (11th Cir. 1993)(noting that Rule 37(a)(4) "was toughened in 1970 to mandate that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified").

Although plaintiff and his counsel failed to provide timely responses to defendant's inquires regarding plaintiff's deposition, the inability of the parties to agree on a deposition date prior to the close of discovery is a least partially defendant's fault. Defendant apparently did not propose a specific date until mid-May, when it suggested the final day of the discovery period.  Nonetheless, given plaintiff's history of providing untimely responses to defendant's scheduling requests, the court will compel plaintiff's deposition so as to prevent any further delay.

With respect to costs and attorneys' fees, the court finds that, under the circumstances of this case, an award would be unjust.  Although plaintiff did fail to appear, defendant was informed well in advance of the noticed date, thereby enabling

28

it to avoid unnecessary expenses preparing for a June 12 deposition. Moreover, prior to the filing of defendant's Motion to Compel, plaintiff agreed to be deposed outside the discovery period and provided defendant with specific dates.

## IV.   **Plaintiff's Motion for Extension of Time to Complete Discovery by 75 Days**

Plaintiff seeks an extension of the discovery period by 75 days from the date of this order. (Doc. 34). Defendant has consented to a 30-day extension, but otherwise opposes the motion. (Doc. 44). Plaintiff states that an extension is needed because the claims in the case "have expanded substantially, which necessitates the instant request for extension of the discovery period in order to allow the Plaintiff adequate time to fully explore and obtain all of the facts relevant and material to this case." (Doc. 34, ¶ 10). Because the court has found that the majority of the new claims proposed by plaintiff are without merit, plaintiff's argument is unpersuasive. Furthermore, as defendant's evidence demonstrates, plaintiff is largely responsible for many of the delays associated with this lawsuit, which is now almost a year and a half old. Nonetheless, the court will allow an additional 45 days for completion of discovery.

29

## V.   Defendant's Motion for Extension of Time to Respond to Plaintiff's Discovery Requests

Defendant seeks an extension of time to serve its responses to plaintiff's numerous discovery requests.  Plaintiff did not file a response to defendant's motion, indicating that he does not oppose it.   <u>See</u> Local Rule 7.1 B, N.D.Ga. (providing that failure to respond to a motion shall indicate no opposition thereto).  For this reasons, and for good cause shown, defendant's motion will be granted.

## VI.   Plaintiff's Motion for Entry of a Protective Order [Doc. 41]

Plaintiff asks the court to enter a protective order regarding confidential information revealed by the parties during the course of this lawsuit.  (Doc. 41). Plaintiff has provided the court with a proposed order.  (Doc. 41, Attachment). Defendant objects to the wording of plaintiff's order and has submitted its own proposed order.  (Doc. 43, Attachment).  The court has reviewed both proposed orders and has incorporated much of the content of both into a protective order of its own making.

AO 72A
(Rev.8/82)

**VII.   Holdings**

For the foregoing reasons:

Plaintiff's Second Motion for Leave to Amend Complaint [Doc. 20] is **GRANTED in part and DENIED in part**.  It is granted insofar as plaintiff seeks to modify his federal claims and to add a state law claim for negligent retention.  It is denied in all other respects.  If plaintiff wishes to pursue these claims, he is **ORDERED** to file and serve on defendant a second amended complaint, limited to the noted claims, within 20 days from the date of this order.

Defendant's Motion for Extension to Respond to Plaintiff's Motion for Leave to File a Second Amended Complaint [Doc. 29] is **GRANTED nunc pro tunc**.

Defendant's Motion to Compel Discovery [Doc. 33] is **GRANTED in part and DENIED in part**.  Plaintiff is **ORDERED** to appear for a properly noticed deposition at a reasonable time and place, to be determined by defendant, prior to the close of the extended discovery period.  Unless plaintiff agrees otherwise, the deposition notice must be served at least 15 days in advance of the deposition.

Plaintiff's Motion for Extension of Time to Complete Discovery by 75 days [Doc. 34] is **GRANTED in part and DENIED in part**.  Discovery is extended by

31

45 days from the date of this order, or until September 1, 2006.  Absent extraordinary circumstances, no additional extensions will be granted.

Defendant's Motion for Extension of Time to Respond to Plaintiff's Discovery Requests [Doc. 37] is **GRANTED nunc pro tunc**.

Plaintiff's Motion for Entry of a Protective Order [Doc. 41] is **GRANTED in part and DENIED in part**.  The court will enter a protective order using its own language.  If either party objects to the language, a motion to modify may be filed within 10 days of the order's issuance.

IT IS SO ORDERED, this 18th day of July, 2006.


_____/s/ Gerrilyn G. Brill_____
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

T:\VII\GriffinMtoAmend.wpd

32