IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RAYMOND H. GRIFFIN,<br>    Plaintiff,<br> v.<br>GMAC COMMERCIAL FINANCE, L.L.C.,<br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:05-CV-199-WBH-GGB |

## ORDER REGARDING SPOLIATION

This employment discrimination action is before the court on plaintiff's "Motion to Strike Answer as Sanction for Spoliation of Documents, Refusal to Make Discovery, Attorney Fees, or in the Alternative, to Preclude Evidence Different from Deposition Testimony During Trial and/or in Any Dispositive Motions." (Doc. 76). Plaintiff's motion concerns alleged deficiencies in defendant's responses to his discovery requests, as well as the adequacy of the Rule 30(b)(6) witnesses provided by defendant. Plaintiff also accuses defendant of spoliation of the evidence, for which he seeks removal of defendant's answer from the record. For reasons discussed below, plaintiff's motion [Doc. 76] is **DENIED**

The discovery period for this cases ended on October 2, 2006. This court's Local Rules require motions to compel discovery to be filed within 10 days of the allegedly incomplete response, or by the close of the discovery period, whichever is latter. See L.R. 37B, N.D.Ga. Accordingly, motions to compel in this case were due no later than October 20, 2006 (if not sooner). See Fed.R.Civ.P. 6(a); L.R. 6.1A. Plaintiff filed the instant motion on October 27, 2006, one week after the outermost deadline. Given the age of this case, the court exercises its discretion to deny an extension of time for plaintiff to file a motion to compel. Accordingly, plaintiff's motion [Doc. 76] is **DENIED** insofar as it seeks additional discovery from defendant and/or sanctions for inadequate responses. Plaintiff's spoliation charge, however, will be considered on the merits.

## **SPOLIATION**

I.   Background

In plaintiff's second amended complaint, he alleges that defendant terminated his employment and denied him other benefits because of his race and in retaliation for his complaints about race discrimination. (Doc. 57). Plaintiff's job with defendant involved "originating, structuring and syndicating lease and loan transactions." (Doc.

2

AO 72A
(Rev.8/82)

57 ¶ 12). Plaintiff alleges that, in 2001, "GMAC's Loan Committee approved 100% of the $116 million of transactions submitted by Plaintiff's Capital Markets team." (Doc. 57 ¶ 29). In the second half 2002, however, his proposed transactions were not approved. Specifically, plaintiff alleges that in July 2002, he "submitted two (2) transactions to the Loan Committee and two (2) other transactions to the EFD Credit Committee, *AES Andres and AES Panama*. Both submittals were initially approved by the aforementioned committees, and later each rescinded their approval." (Id. ¶ 40) (emphasis added). The following month, plaintiff "submitted a pre-screened $25 million *Consumer Electric Co.* deal. Despite the fact that the transaction met all of the outlined plan objectives . . . and the Product Profile investment guidelines, the Chief Credit Officer . . . rejected the transaction." (Id. ¶ 42)(emphasis added). In October 2002, plaintiff "submitted [an] *Orion Power Partners* deal for $25 million to [the] EFD Credit Committee. Again the transaction had been successfully pre-screened and met the Product Profile guideline[s]. Yet, prior to the Credit Committee meeting, the submission was pulled from the agenda . . . ." (Id. ¶ 43)(emphasis added). Finally, in December 2002, plaintiff "submitted a prescreened, product profile competent *Middlesex Gas* $15 million dollar[] transaction," which was also pulled from the committee agenda at the last minute. (Id. ¶ 45)(emphasis added).

3

Plaintiff's employment was terminated on January 7, 2003, "for alleged failure to generate outgoing viable new business . . . ."  (Id. ¶ 47).  In plaintiff's brief, he identifies deals involving the following companies as being unjustifiably denied: AES Andres, Reliant, AES Panama, Fortistar, Orion Power Partners, and Middlesex Gas. (Doc. 76, Brf. at 4).

The parties agree that defendant provided plaintiff with documentation regarding deals with Pep Boys and Air Transat.  (See Doc. 77, Pla. Reply at 3; see also Doc. 75, Aff. of Chandra C. Davis ¶ 3).[1]  Defendant denies having any other pertinent documents.  Plaintiff, however, was able to obtain, from other sources, 541 pages of "relevant documents that directly relate[] to his Project Finance deal submissions, due diligence, underwriting, etc."  (Doc. 76, Pla. Brf. at 7).

---

[1] Defendant contends that it has also provided documentation regarding deals with Tower Automotive, Giant, AES Andres, AES Panama, Consumer's Energy, Orion Power Partners, Middlesex Gas, Reliant/Orion Power, Old World, and Commercial Air.  (Doc. 75, Aff. of Chandra C. Davis ¶ 3).  In response, plaintiff filed all 662 pages of the discovery he received from defendant allegedly containing this documentation.  (Doc. 77, Exhs. 1-16).  The court has undertaken a cursory review of this information, but has not scrutinized it sufficiently to determine definitively whether information regarding the deals identified by defendant is present.  The court will assume, for purposes of this motion, that the noted information is *not* present and that plaintiff has received only Pep Boys and Air Transat documentation.

Defendant asserts that the missing documents (if any) were destroyed pursuant to its document retention policy. (Davis Aff. ¶ 4). That policy states that, once specified steps have been taken to close the file of a denied loan deal, "the underwriting process is terminated and all related due diligence documents are retained for 12 months." (Doc. 77-13, Exh. 12 at GMAC-CF0544). A separate chart indicates that "Loan Application Denials/Aborted Deals/Dead Files" are retained off-site by the underwriting department for a period of 12 months. (Id. at GMAC-CF0545).

On June 2, 2003, almost six months after plaintiff's termination, plaintiff filed a charge of discrimination against defendant with the Equal Employment Opportunity Commission ("EEOC"). He alleged that he had been terminated because of his race. The factual portion of plaintiff's EEOC charge focuses on several comparators who were allegedly more favorably treated than plaintiff under similar circumstances. The charge states:

> 1. In February 2001, I was hired by the above-named employer as a Senior Vice President, Director of Capital Markets. I was the only Black Senior Vice President within the company. On January 7, 2003, I was terminated without any prior warning outlining job performance concerns. Three White employees were provided 30-day probationary warnings. Additionally, those three employees had been given more time to reach their respective performance goals averaging 18 months in their current positions.

5

> Additionally, one Senior Vice President (White) was offered a new position prior to termination. I was not afforded the same opportunity.
>
> 2. Bill Orr, Senior Vice President (White), and Lee Palm, President (White), terminated me for lack of new business performance while in my current position of Manager of Project Finance.
>
> 3. I believe that I have been discriminated against because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Doc. 76-4, Exh. A). On June 11, 2003, a copy of this charge, along with a request for a response, was sent to defendant from the EEOC. (See Doc. 77-4, Exh. 3 at GMAC-CF0128-0129).[2] Defendant provided a lengthy response, most of which addresses paragraph one of plaintiff's EEOC charge. (See Doc. 77-2, Exh. 1 at GMAC-CF0011-0014). In response to paragraph two, defendant stated:

> Charging Party was terminated for numerous reasons, one being the lack of new business generated. Additional reasons were: (1) lack of outgoing viable proposals in 2002; (2) lack of legitimate transactions in credit in 2002; (3) lack of prospecting to generate new transactions; and (4) inability to complete assigned administrative and marketing study tasks on a timely basis as directed by his supervisor.

(Id. at GMAC-CF0013).

---

[2]The charge questionnaire completed by plaintiff, which was *not* sent to defendant, also focuses on the alleged comparators. (See Doc. 76-5, Exh. B).

On June 8, 2004, the EEOC issued a favorable determination regarding plaintiff's charge. (Doc. 76-7, Exh. D). After receiving a right-to-sue letter from the EEOC, plaintiff filed the instant civil action on January 24, 2005, more than two years after his termination.

II.   Discussion

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (citing Black's Law Dictionary 1401 (6th ed. 1990)); accord Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001).  "This obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation – most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation."  Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998); accord Silvestri, 271 F.3d at 591.  "Notice does not have to be of actual litigation, but can concern 'potential' litigation.  Otherwise, any person could shred documents to their

heart's content before suit is brought without fear of sanction." Bayoil, S.A. v. Polembros Shipping Ltd., 196 F.R.D. 479, 483 (S.D.Tex. 2000)(citing ABC Home Health Serv., Inc. v. IBM Corp., 158 F.R.D. 180, 182 (S.D.Ga. 1994)).

In determining whether a spoliation sanction is warranted, this court must consider the following factors: (1) whether plaintiff was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether defendant acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence provided by the spoliator were not excluded.[3] Flury v. Daimler Chrysler Corp., 427 F.3d 939, 945 (11th Cir. 2005). "With regard to the fourth factor, [the] law does not require a showing of malice in order to find bad faith. The court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party." Flury, 427 F.3d at 946 (citations omitted).

Possible spoliation sanctions include: (1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator. Flury, 427 F.3d at 945. This court has broad discretion, governed by federal law, with respect to the imposition of spoliation

---

[3] Expert testimony from defendant is not at issue in this case.

8

sanctions. See id. at 944. This power derives from the court's inherent power to manage its own affairs and to insure integrity in the discovery process. See id. "Dismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." Id.

### A.  Defendant's Culpability

Resolution of this motion turns, in part, on when defendant knew, or should have known, that plaintiff was likely to bring a lawsuit against it for which the destroyed documents might be relevant. The relevant time period for acquisition of this knowledge is circumscribed by defendant's document retention policy, which in this case corresponds to the end of 2003 (at the latest). Cf. United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002)(holding that defendants did not engage in spoliation of evidence where records were intentionally destroyed in accordance with a document retention policy and state regulations before litigation commenced). Defendant cannot be held accountable for information it received after

9

the documents were destroyed. Accordingly, the only relevant evidence is the information defendant received from the EEOC in 2003.[4]

Notably, plaintiff's EEOC charge, which was sent to defendant, does not directly quarrel with the reason purportedly given by defendant for plaintiff's termination – "lack of new business performance." Instead, the charge focuses on three comparators, who allegedly were given more time to improve their performance. Given this focus, defendant's failure to recognize the relevance of the destroyed documents is understandable. "Corporations are not obligated, 'upon recognizing the threat of litigation,' to 'preserve every shred of paper, every e-mail or electronic document, and every backup tape.'" Samsung Electronics Co., Ltd. v. Rambus, Inc., 439 F.Supp.2d 524, 542-43 (E.D.Va. 2006)(quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)). Nonetheless, the court believes that a prudent employer – faced with an EEOC charge similar to plaintiff's – would understand the importance of retaining all documents associated with the complaining employee. Defendant's failure to take this step was, at worst, negligent.

---

[4]Contrary to plaintiff's argument, evidence before the court does not support a finding that defendant intentionally kept evidence from plaintiff.

B.     Effect on Plaintiff

Defendant's negligence – although not entirely without impact on plaintiff's ability to prove his case – appears to have had little practical effect. Plaintiff was able to cure the loss, in part, by obtaining documents from his own sources. Furthermore, he was free, during discovery, to question all of those involved in denial of his loan proposals as to the specifics of those proposals and their reasons for rejecting them. Indeed, plaintiff himself can testify regarding the proposed transactions.

In plaintiff's reply brief, he argues that defendant effectively prevented him "from retaining the services of an expert to study, test, review and give an opinion on the quality, effectiveness, quantity and viability of Plaintiff's submitted deals, and therein lies the 'practical importance of the destroyed records' and prejudice to the Plaintiff." (Doc. 77, Brf. at 8). In short, plaintiff claims that he has been prevented from offering an expert's opinion on the viability of his funding proposals. The court assumes that defendant will rely on plaintiff's lack of viable funding proposals as one of its legitimate non-discriminatory reasons for his termination.[5]

---

[5]In its response to plaintiff's EEOC (quoted above), defendant provided several reasons for plaintiff's termination, including "lack of outgoing viable proposals in 2002."

11

Generally, "a plaintiff may not establish that an employer's proffered reason [for an adverse employment action] is pretextual merely by questioning the wisdom of the employer's reason," especially not if the reason given is "one that might motivate a reasonable employer." Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997). "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'" Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1992). To draw defendant's credibility into question, plaintiff must "demonstrate[] 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Combs, 106 F.3d at 1538. Cf. Chapman v. AI Transport, 229 F.3d. 1012, 1048-49 (11th Cir. 2000)(*en banc*)(Birch, J., concurring in part and dissenting in part)("while the business judgment rule protects Defendants against claims that their reasons are imprudent, it must not be used to shield Defendants against colorable claims that their reasons are non-credible.").

The decisions in this case involved highly complex, multi-million dollar financing proposals, which lend themselves to differences of opinion among reasonable individuals regarding viability. In addition, defendant's discretionary

12

business objectives and other company-specific factors could lead it to reject proposals that otherwise would be considered reasonable. Accordingly, even assuming plaintiff could procure an expert to opine that his proposals were viable, given the complexity and discretionary nature of defendant's decisions, a finding of incredibility based solely on the expert's opinion seems highly unlikely.

Given the limited value of expert testimony to plaintiff's case and the availability of witnesses who can testify (on both sides of the issue) regarding plaintiff's loan proposals, the court finds that plaintiff's inability to supply an expert with all of the relevant documents has little practical impact on his case.

C.  Conclusion

For the reasons stated, the court finds that defendant's culpability for the loss of relevant documents is low and that any prejudice suffered by plaintiff is slight. Accordingly, plaintiff's Motion to Strike Answer [Doc. 76] is **DENIED**. Whether a lessor sanction – such as an adverse jury instruction – would be appropriate is left to the discretion of the trial judge.

13

IT IS SO ORDERED, this 15th day of February, 2007.

                                                  /s/ Gerrilyn G. Brill
                                      GERRILYN G. BRILL
                                      UNITED STATES MAGISTRATE JUDGE

T:\VII\GriffinSpoliation.wpd